Eastern District of Kentucky
**F I L E D**

AUG 1 2 2014

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| SARAH ELIZAHBETH BOYD, | CIVIL ACTION NO. 7:13-CV-60-KKC |
| Plaintiff, | |
| V. | MEMORANDUM, OPINION, AND ORDER |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

\*\*\* \*\*\* \*\*\*

Plaintiff Sarah Boyd brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI"). The Court, having reviewed the record, will affirm he Commissioner's decision, as it is supported by the substantial evidence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Boyd filed her claim for benefits on May 7, 2010, alleging an onset date of May 3, 2004. (AR 18). Her claim was initially denied and denied again on reconsideration. (AR 18). Boyd then filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (AR 18). A hearing was held on September 27, 2011 and a supplemental hearing was held on April 16, 2012. (AR 18). The ALJ issued an unfavorable decision on May 11, 2012. (AR 30). The Appeals Council ("AC") then denied Boyd's request for review. (AR 1).

At the time of administrative hearing, Boyd was nineteen years old, married, and had never been employed. (DE 15-1, p.4). She completed the tenth grade in school. (AR

15-1, p. 4). She alleges that she is disabled due to depression and anxiety. (AR 51). Boyd also alleges she has arthritis in her legs, and is borderline intellectual functioning. (AR 20, 22).

In determining whether a claimant has a compensable disability under the Social Security Act (the "Act"), the regulations provide a five-step sequential process which the ALJ must follow. 20 C.F.R. § 404.1520(a)–(e); *see Walters v. Comm'r of Soc. Sec.*, 127 F. 3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

> (1) If the claimant is currently engaged in substantial gainful activity, she is not disabled.

> (2) If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

> (3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

> (4) If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

> (5) Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of the process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the ALJ reaches the fifth step without finding that the claimant is not disabled, then the burden

shifts to the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. § 404, 1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

In this case, the ALJ began his analysis at step one by determining that the claimant has not engaged in substantial gainful activity since her application date. (AR 20). At step two, the ALJ determined that Boyd suffers from the following severe impairment: borderline intellectual functioning. (AR 20). In the third step, the ALJ found that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 22).

At step four, the ALJ found that based on the entire record, Boyd has the residual functional capacity ("RFC") as follows:

> to perform a range of work at all exertional levels but with the following nonexertional limitations: The claimant is able to understand and remember simple instructions and procedures requiring brief initial learning periods, sustain concentration, effort and adequate though not rapid pace for simple tasks requiring little independent judgment and involving minimal variations and doing so at requisite schedules of work and breaks, interact frequently as needed with supervisors and peers and sufficiently for task completion, yet requiring no significant interaction with the public, and adapt adequately to situational conditions and changes with reasonable support and structures, and fairly minimal demands. The claimant also has poor (defined as seriously limited but not precluded) ability to deal with the public and her work would have to be in an object-focused setting.

(AR 24). The ALJ then determined that Boyd has no past relevant work. (AR 29).

At step five, considering Boyd's age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that the claimant can perform. (AR 29). The ALJ found that Boyd would be able to perform the requirements of laborer, laundry worker, and hand picker. (AR 29–30).

The AC subsequently denied Boyd's request for review of the ALJ's May 2012 opinion. (AR 1). Boyd has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe under 42 U.S.C. § 405(g).

## II. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the Court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her*, 203 F.3d at 389–90. However, the Court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## III. ANALYSIS

On appeal, Boyd argues the ALJ's decision is not supported by substantial evidence and was not decided correctly for five reasons.

### i.

Boyd first contends that the ALJ erred at step five by posing an inaccurate hypothetical to the vocational expert ("VE") and then relying on the VE's answer in determining that work exists in the national economy that Boyd could perform. (DE 15-1, p. 1, 18). However, an ALJ may rely upon the VE's testimony to find that work is available in the national economy so long as the ALJ provides the VE with a hypothetical that accurately portrays the claimant's physical and mental impairments. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002). Here, Boyd maintains that the ALJ failed to consider her severe mental impairments. (DE 15-1, p.2).

Boyd's argument is without merit. The ALJ found that Boyd suffers from one severe impairment, borderline intellectual functioning. The ALJ went on to determine that Boyd has the RFC to perform a range of work at all exertional levels, but she has a poor ability to deal with the public. (AR 24). He also determined that she is able to understand and remember simple instructions and procedures requiring brief initial learning periods. The ALJ's hypothetical accurately reflected the RFC he determined based on the credible evidence. (AR 42–43, 58). An ALJ is required to incorporate only the limitations he accepts as credible in the hypothetical question to the VE. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). To the extent Boyd's argument goes beyond the VE hypothetical in that she disagrees with the RFC determined by the ALJ, she does not make any clear arguments to this effect aside from those discussed below, and the Court will not attempt to flesh out those arguments on her behalf. *See Hollon ex rel. Hollon v.*

*Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). Furthermore, the ALJ's RFC determination was based on substantial evidence, which he clearly outlined in his opinion. (AR 24–29).

**ii.**

Boyd next argues that the ALJ "not only committed due process violations in generating post-hearing medical evidence in violation of HALLEX 1-2-542 but then openly relies upon that flawed evidence to discredit Ms. Boyd's treating and examining mental health sources." (DE 15-1, p. 18). Essentially, Boyd maintains that the ALJ erred by sending interrogatories to Dr. Tessnear after the initial hearing took place, without providing Boyd with an opportunity to comment or participate in the interrogatories. This argument is without merit.

As an initial matter, HALLEX is not binding on this Court and many district courts in this circuit have concluded that a deviation from the instructions in HALLEX does not warrant remand. *See Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008); *Estep v. Astrue*, No. 2:11-0017, 2013 WL 212643 at *11 (M.D. Tenn. Jan. 18, 2013) (adopted in *Estep v. Colvin*, No. 2:11-CV-00017, 2013 WL 2255852 (M.D. Tenn. May 22, 2013)) ("[E]ven if the Commissioner did not comply with section I–2–8–40, HALLEX is not considered binding authority in the Sixth Circuit."); *Kendall v. Astrue*, No. 09-239-GWU, 2010 WL 1994912 at *4 (E.D. Ky. May 19, 2010) ("HALLEX does not create a procedural due process issue as do the Commissioner's regulations in the Code of Federal Regulations."). Nevertheless, even assuming HALLEX is controlling on this Court, Boyd's argument fails.

First, the ALJ did not rely on Dr. Tessnear's opinion in reaching his conclusions, as he did not discuss *any* of the limitations Dr. Tessnear assessed. (AR 27). Moreover, Dr. Tessnear's opinion was made part of the record in October 2011, well before the

supplemental hearing was held in April 2012. (AR 680–86). At the supplemental hearing, the ALJ indicated that new evidence had been added to the record, and Boyd's counsel did not object to Dr. Tessnear's opinion evidence. (AR 39). Furthermore, the ALJ only relied on Dr. Tessnear's opinion as one of several reasons for according little weight to Dr. Adkin's opinion. This was not in error and the ALJ's decision was supported by substantial evidence. (AR 29).

### iii.

Boyd next asserts that the ALJ failed to give "good reasons" for rejecting the findings of Boyd's "treating mental counselors and examining psychologists." (DE 15-1, p. 3). This assertion does not hold water. In her motion, Boyd insists that the ALJ ignored medical evidence from Mountain Comprehensive Care Center where Boyd received counseling from Roger Coleman, LCSW. As an initial matter, a licensed clinical social worker (LCSW) is not a medical source under the regulations and his opinion is not entitled to special weight or consideration. *See* 20 C.F.R. § 416.913(a), (d)(1). Moreover, the ALJ gave Coleman's opinion little weight because it was unsupported by the body of evidence and was internally inconsistent. (AR 28). As the ALJ indicated, "If the claimant were as limited as Roger Coleman alleges she probably would not be able to function at all." (AR 28). Moreover, Boyd and Coleman met only a few times, and Coleman is not a licensed psychologist. Coleman also documented that Boyd was friendly and made good eye contact and that she had no problems getting along with friends, neighbors, and authority figures. (AR 21, 693). Simply put, substantial evidence supports the ALJ's decision to give Coleman's opinion little weight.

Next, Boyd insists the ALJ should have found she met one of the Listing of Impairments as set forth in 12.04, 12.05, and 12.06. Boyd fails to point to any evidence to address the criteria for the listings in 12.04 and 12.06, and the Court declines to formulate any arguments on her behalf. *See Hollon ex rel. Hollon*, 447 F.3d at 491; *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). As to Boyd's argument that she meets the listing in 12.05, she fails to meet her burden of proving she is presumptively disabled.

Listing 12.05 provides in pertinent part:

> *Mental Retardation*: Mental retardation refers to significantly subaverage, general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for the disorder is met when the requirements in A, B, C, or D are satisfied . . .
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P app. 1 § 12.05. Despite failing to even mention her listing argument in her "summary of reasons for remand and outright benefits," Boyd appears to argue that she meets the Listing Impairment because she has a full scale IQ score of 65 and in combination "with her other impairments meets Listing of Impairments 12.05." (DE 15-1, p. 20.

Boyd has failed to establish that she meets Listing of Impairments 12.05. Boyd cites a full scale IQ of 65 that consultative psychologist Brad Adkins assessed in February 2011.

(AR 629–30). However, Dr. Adkins diagnosed Boyd with Borderline Intellectual Functioning, not mild mental retardation. (AR 631). Moreover, when Boyd was tested at school, she achieved a full scale score of 79, well above the Listing requirements. (AR 276).

However, even assuming Boyd was able to establish a qualifying IQ score, she has not established that she meets any of the paragraph D criteria for Listing 12.05. To qualify for the Listing, she must establish that she meets two of the four options. As the ALJ explained, Boyd does not experience more than mild and moderate limitations in her daily living, social functioning, concentration, persistence, and pace. (AR 23). Boyd has not alleged nor shown any evidence of repeated episodes of decomposition. Boyd is able to clean, shop, cook, take public transportation, pay bills, maintain a residence, take care of her rabbit daily, perform her own personal grooming, fix simple meals, handle a savings account, draw, and play Play Station. (AR 23, 225–32). With regard to her social functioning, Boyd is married, goes to the grocery store without a problem, and occasionally visits with friends and family. Additionally, Coleman, Boyd's counselor, reported good eye contact and a positive ability to deal with authority figures. (AR 23, 693, 698). With regard to concentration, persistence, and pace, Boyd is able to concentrate to play Play Station, draw, take care of her rabbit, and pay bills. (AR 23). Dr. Ford, a consulting examiner reported that Boyd could spell the word "world" backwards, that she could recite three and four digits backwards with one error, and could name the year, month, date, and day of the week. (AR 370). While Boyd's counsel objected to Dr. Ford's findings and Boyd testified she could not spell the word "world" backward, Boyd and her counsel gave no reason why Dr. Ford would have falsely reported Boyd's abilities.

In sum, Boyd has not proven that she meets Listing 12.05, and the ALJ's opinion that Boyd did not meeting a Listing is supported by substantial evidence in the record.

**V.**

Finally, Boyd makes several attempts to argue that the ALJ erred when weighing various medical opinions. However, the ALJ properly gave reasons for assigning various weights to the opinions he considered. He afforded Dr. Ford's opinion some weight because the State agency gave the opinion great weight and because it aligned with the totality of the medical evidence. (AR 28). He afforded Roger Coleman little weight for the reasons this Court has previously addressed. (AR 28). He afforded Dr. Adkins little weight because he only examined Boyd once and his findings were inconsistent with the medical evidence. (AR 29). Furthermore, Dr. Adkin's findings concerning Boyd's IQ were contradicted by her previous school administered IQ test, which Dr. Tessnear opined was likely more accurate. (AR 29). Thus, the ALJ's opinion was supported by the substantial evidence, and he did not err when weighing the various medical opinions.

### IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that:

1. The plaintiff's motion for summary judgment (DE 15) is **DENIED**;

2. The defendant's motion for summary judgment (DE 12) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards;

4. The plaintiff's motion for leave to file a brief in excess of fifteen pages (DE 14) is **GRANTED**; and

5. A judgment will be entered contemporaneously with this order.

Dated this 12th day of August, 2014.



Signed By:
*Karen K. Caldwell*
United States District Judge

10